UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                        )
IN THE MATTER OF:                       )
                                        )         Magistrate No. _____
GALAXIE CHEMICAL                        )
CORPORATION SITE,                       )
PATERSON, NEW JERSEY                    )
_____)

EX PARTE APPLICATION FOR AN ADMINISTRATIVE
WARRANT UNDER SECTION 104(e) OF THE COMPREHENSIVE
ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT

        The United States of America, by and through undersigned counsel, on behalf of the

United States Environmental Protection Agency ("EPA"), hereby seeks an administrative

warrant authorizing EPA and its representatives to gain, for a period of 120 business days,

complete and unlimited entry to the property located at 6-34 Piercy Street (Lot 1, Block 115) in

the City of Paterson, New Jersey (the "Site"), which is required in order to inspect the Site,

conduct sampling of various containers, soil, and surface water at the Site, and to perform such

other response and removal actions as EPA deems necessary to protect human health or welfare

or the environment under Sections 104(a)(1), (b), (e)(3)(D), and (e)(6) of the Comprehensive

Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"),

42 U.S.C. §§ 9604(a)(1), (b), (e)(3)(D), and (e)(6).

        The actions to be taken at the Site include: 1) securing the Site to prevent unauthorized

access and to prevent the public from coming into contact with hazardous substances at the Site;

2) inspecting the Site; 3) sampling various containers, soil, and surface water contained on the

Site; and 4) conducting such other response and removal actions as EPA deems necessary to

protect human health or welfare or the environment, including but not limited to the following:

removal of containers of hazardous substances, pollutants, or contaminants; off-Site disposal in

an appropriate manner of all materials removed from the Site; and further assessment to determine if additional response actions are necessary.

The owner of Galaxie Chemical Corporation, by and through his power of attorney, has declined to grant EPA access to the Site in order to perform all necessary response actions.

The grounds for this application are set forth in full in the United States' Memorandum of Law in Support of its Application, which is submitted herewith. The United States has also attached the Declarations of Neil Norrell, an On-Scene Coordinator for the EPA, and Robert Montgomery, a Civil Investigator for the EPA.  Finally, the United States is submitting a proposed Warrant.

WHEREFORE, the United States requests that this Court grant the United States' application and the proposed Warrant for EPA to enter the Property for a period of 120 business days.

Respectfully submitted,

June 21, 2018
Dated

*s/ Richard S. Greene IV*
RICHARD S. GREENE IV
Trial Attorney
United States Department of Justice
Environment and Natural Resources
Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 307-3967
Fax: (202) 514-0097
Email: richard.greene@usdoj.gov
Fed Bar (TN) #: 024450

CRAIG CARPENITO
United States Attorney
District of New Jersey

ALLAN URGENT
Assistant United States Attorney
District of New Jersey
970 Broad Street, 7th Floor
Newark, NJ 07102

Of counsel
William J. Reilly, Jr., Esq.
Office of Regional Counsel
USEPA Region II
290 Broadway, 17th floor
New York, NY 10007

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                                    )
IN THE MATTER OF:                                   )
                                                    )        Magistrate No. _____
GALAXIE CHEMICAL                                    )
CORPORATION SITE,                                   )
PATERSON, NEW JERSEY                                )
_____)

MEMORANDUM IN SUPPORT OF THE
APPLICATION FOR ADMINISTRATIVE WARRANT

In support of its Application for an Administrative Warrant, the United States represents:

1.      A federal agency is authorized to apply for a warrant if Congress has granted the

Agency statutory entry authority. *Bunker Hill Co. v. United States*, 658 F. 2d 1280, 1284 (9th

Cir. 1981). Warrants may be obtained on an *ex parte* basis. *Id*. The United States Supreme Court

has noted that:

> [p]robable cause in the criminal sense is not required.   For
> purposes of an administrative search . . . probable cause justifying
> the issuance of a warrant may be based not only on specific
> evidence of an existing violation but also on a showing that
> 'reasonable legislative or administrative standards for conducting
> an . . . inspection are satisfied with respect to a particular
> [establishment].'

2.      *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320-21 (1978) (quoting *Camara v.

Mun. Court*, 387 U.S. 523, 538 (1967)).   EPA's statutory authority to enter, inspect, obtain

samples, and perform removal activities is clear. *See* 42 U.S.C. § 9604(a) and (e); *cf. United

States v. M/V Sanctuary*, 540 F.3d 295, 300-01 (4th Cir. 2008) (finding that EPA had probable

cause for an administrative inspection warrant consistent with statutory authorization under

Toxic Substances Control Act to inspect a vessel for presence of toxic substances). In the present

case, EPA seeks a warrant to implement and enforce the provisions of CERCLA, i.e., to perform

response actions in response to a release or threat of release of hazardous substances, pollutants,

2

or contaminants into the environment from the Site. The standards for performing such response actions are contained within the NCP and are satisfied with respect to the Site.

3.     The United States Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601-9675, in response to widespread concern over the severe environmental and public health effects arising from the improper disposal of hazardous wastes and other hazardous substances.   *See generally Eagle Picher Indus. v. EPA*, 759 F. 2d 922, 925-26 (D.C. Cir. 1985).   CERCLA provides the United States Environmental Protection Agency ("EPA"), through delegations of authority,[1] broad powers to investigate and clean up hazardous waste sites.

4.     Under Section 104(a)(1) of CERCLA, EPA has broad authority to respond to a release or substantial threat of a release of a hazardous substance consistent with the National Contingency Plan ("NCP") to protect the public health or welfare or to the environment. 42 U.S.C. § 9604(a)(1).[2]

---

[1] The President of the United States has delegated most of the authority for administering CERCLA to the Administrator of EPA. *See* 40 C.F.R § 300.100; *See also* Exec. Order No. 12,580, 52 Fed. Reg. 2,923 (Jan. 29, 1987); Exec. Order No. 13,308, 68 Fed. Reg. 27,691 (Jun. 20, 2003).

[2] "Hazardous substances" are broadly defined in § 101(14) of CERCLA, 42 U.S.C. § 9601(14), and include all substances identified at 40 C.F.R. Part 302.4.

A "release" is defined at § 101(22) of CERCLA to include, with certain exceptions not relevant here, "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." 42 U.S.C. § 9601(22).

The National Contingency Plan, 40 C.F.R. Part 300 ("NCP"), was originally developed under § 311(c)(2) of the Clean Water Act, 33 U.S.C. § 1321(c)(2), to guide federal agencies in removing oil or hazardous substances from the waters of the United States.   Congress directed EPA, through § 105 of CERCLA, 42 U.S.C. § 9605, to revise and republish the NCP to "reflect and effectuate the responsibilities and powers created by (CERCLA)." The NCP now sets forth procedures and requirements for responding to hazardous waste sites.

"Removal" is defined in § 101(23) of CERCLA as "the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary [sic] taken in the event of a threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damages to the public health or welfare or to the environment, which may otherwise result from a release or threat of release." 42 U.S.C. § 9601(23).

3

5.      Under 40 C.F.R. § 300.415(b)(1), when EPA makes a determination that there is

threat to the public health, welfare, or to the environment, it shall consider the factors under 40

C.F.R. § 300.415(b)(2) to determine the appropriate removal action to address the release or

threat of release of hazardous substances.

6.      When EPA is authorized to respond to a release or a threat of release of hazardous

substances under Section 104(a), EPA also has the authority to gather information, such as

investigations, monitoring, surveys, and testing to determine the existence and extent of a release

or a threat of release of hazardous substances, the source and nature of the hazardous substances

involved, and the extent of danger to the public health, welfare, or to the environment. 42 U.S.C.

§ 9604(b)(1).

7.      Particular to this matter, Section 104(e) of CERCLA provides EPA with broad

access authority in order to effectuate the purposes of CERCLA and authorizes EPA and its

representatives to reasonably enter any property or place to inspect or take samples when EPA

reasonably believes there has been a release or a threat of release of hazardous substances. 42

U.S.C. § 9604(e)(1), (e)(3), and (e)(4).

8.      Under Section 104(e)(6), EPA and its representatives shall not be precluded from

securing entry or obtaining information in any other lawful manner. 42 U.S.C. § 9604(e)(6).

9.      The Galaxie Chemical Corporation Site ("Site") is located at 6-34 Piercy Street in

the Paterson, New Jersey. The Site is approximately 1.24 acres in size and consists of an

unoccupied and abandoned single building bordered by Piercy Street, Holsman Street, East Main

Street and North Straight Street. The Site has entrances along each of these streets. The area

4

surrounding the Site is mixed residential and commercial with the closest residence located approximately 40 feet away. Declaration of Neil Norrell ("Norrell Decl.") ¶ 5.

10.     Galaxie Chemical Corporation ("Galaxie Chemical") acquired the Site by a deed dated October 16, 1978, and is the current record owner of the Site. On October 14, 2010 Galaxie Chemical filed for bankruptcy under Chapter 7 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of New Jersey (Case No. 10-41916-MS). Galaxie Chemical's bankruptcy petition lists the Site property at 6-34 Piercy Street as property of the bankruptcy estate. During the bankruptcy case the trustee proposed to abandon the Site, including the building where the business was located. The Site was abandoned with no objections, and ownership of the Site reverted to the debtor, Galaxie Chemical. *See* 11 U.S.C. § 554; *See also Moses v. Howard Univ. Hospital*, 606 F.3d 789, 791 (D.C. Cir. 2010) ("[W]hen property of the bankrupt is abandoned, the title 'reverts to the bankrupt, *nunc pro tunc*, so that he is treated as having owned it continuously.'" (citations omitted)). *See* Deed for Site property (Exhibit 1); and Bankruptcy Petition for Galaxie Chemical Corporation, Information for Notice of Abandonment, and Certification of No Objection (Exhibit 2).

11.     The bankruptcy court issued a final decree on May 6, 2011 closing the bankruptcy case. To date, EPA has found no information indicating that Galaxie Chemical dissolved after the bankruptcy.

12.     EPA's research identified Michael P. Santoro, who currently resides at 23 S. Beaumont Place, Whippany, New Jersey as the President and Chief Executive Officer of Galaxie Chemical. On July 22, 2011 Mr. Santoro filed for Chapter 7 personal bankruptcy in the U.S. Bankruptcy Court of the District of New Jersey (Case No. 11-31863). Mr. Santoro's bankruptcy

petition identified him as the "100% shareholder" of Galaxie Chemical. Declaration of Robert

Montgomery ("Montgomery Decl.") ¶ 6; Bankruptcy Petition for Michael P. Santoro (Exhibit 4).

13.     The Site remains abandoned, with the last known operation activity occurring

sometime around 2010. There is evidence of prior unlawful entries, and on May 12, 2018, there

was a fire at the Site. The City of Paterson Fire Department determined trespassers started the

fire. The New Jersey Department of Environmental Protection ("NJDEP") secured the Site after

the fire by boarding and securing its doors. Norrell Decl. ¶¶ 6, 7 and 8; and Tax Assessor record

for the Site property (Exhibit 3).

14.     On May 14, 2018, the NJDEP notified EPA of the fire at the Site. EPA responded

that same day and entered the Site with the assistance of NJDEP. The objective of EPA's entry

was to assess the conditions at the Site. EPA observed approximately 500 drums throughout the

Site. The drums contain various hazardous substances like acid, including hydrochloric acid and

acetic acid, and flammable material, including xylene and oxidizers. Some drums were labeled as

containing 3,3'-dichlorobenzidine, a known hazardous substance and a probable human

carcinogen. Xylene, 3,3'-dichlorobenzidine, hydrochloric acid and acetic acid are listed

hazardous substances under 40 C.F.R. § 302.4. Most of the drums are in poor condition;

improperly stored, leaking, and rusting. Norrell Decl. ¶¶ 6, 8, 9, and 10.

15.     On May 14, 2018, NJDEP verbally referred the Site to EPA in order to address

the hazardous conditions there and followed with a formal written referral on May 17, 2018.  *Id*.

¶¶ 12 and 14.

16.     On June 1, 2018, EPA received notification that NJDEP is providing periodic

monitoring of the Site to help secure it from trespassers while EPA seeks authorization for entry.

6

*Id.* ¶ 14.

17.    EPA has determined that the Site is a place where hazardous substances, pollutants, or contaminants have been or may have been generated, stored, treated, disposed of, or transported to, or from which hazardous substances, pollutants, or contaminants have been or may have been released. EPA requires entry to the Site to perform a response action. *Id.* ¶ 11.

18.    On May 15, 2018, EPA authorized the performance of an emergency removal action to address the release or threatened release of hazardous substances, pollutants, or contaminants at the Site. EPA's removal action will include inventorying and sampling container contents and other potentially hazardous materials, as well as conducting field analysis to determine waste characteristics, and confirmatory enforcement sampling. EPA will stabilize containers as needed and take additional measures to secure the facility from trespassers. EPA may conduct further response actions at the Site should the results of EPA's investigations warrant it. *Id.* ¶13 and 15.

19.    To perform the response actions described above, employees, agents, contractors, and other representatives of EPA need to enter the Site promptly. *Id.* ¶ 13.

20.    Despite repeated attempts, EPA has been unable to obtain permission to enter the Site. Michael P. Santoro, the 89-year-old President and CEO of Galaxie Chemical, reportedly has dementia and cannot consent to EPA entering the Site. Janine Marie Schwab, who is Mr. Santoro's daughter, represented that she is the attorney-in-fact for her father and has declined to authorize EPA to enter. EPA and its contractors are prepared to respond to the releases and threatened releases of hazardous substances at the Site, but are unable to do so due to Ms. Janine Schwab's refusal to authorize entry. Montgomery Decl. ¶ ¶ 7, 8, and 9.

7

21.     The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

22.     Galaxie Chemical and Mr. Michael P. Santoro are "persons" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

23.     Hazardous substances, pollutants, or contaminants within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14) have been found at the Site.

24.     EPA has a reasonable basis to believe that "there may be a release or threat of release of a hazardous substance" within the meaning of Section 104(e)(1) of CERCLA, 42 U.S.C. § 9604(e)(1), at the Site.

25.     EPA has the authority to enter, inspect, and take samples at the Site for the purposes of determining the need for a response, choosing or taking a response, or otherwise enforcing the provisions of CERCLA within the meaning of 42. U.S.C. § 9604(e)(3) and (e)(4).

26.     The release and threatened release of hazardous substances or pollutants or contaminants at the Site constitute an actual release or a threat of such a release into the environment as the terms "environment" and "release" are defined in Sections 101(8) and 101(22) of CERCLA, 42 U.S.C. §§ 9601(8) and (22).

27.     The conditions EPA observed at the Site pose a risk to human health and the environment. Norrell Decl. ¶ 11.

28.     The conditions at the Site implicate the following factors of 40 C.F.R. § 300.415(b)(2), each of which may provide independent grounds for a CERCLA removal action:

      a.   Actual or potential exposure to nearby human populations, animals, or the food chain from hazardous substances or pollutants or contaminants (40

C.F.R. § 300.415(b)(2)(i));

    b.   Hazardous substances or pollutants or contaminants in drums, barrels, tanks, or other bulk storage containers, that may pose a threat of release (40 C.F.R. § 300.415(b)(2)(iii));

    c.   Threat of fire or explosion (40 C.F.R. § 300.415(b)(2)(vi)); and

    d.   The availability of other appropriate federal or state response mechanisms to respond to the release; 40 C.F.R. § 300.415(b)(2)(vii)).

29.    The threats to public health or welfare or the environment include, but are not limited to, the immediate threat of exposure through direct human contact, including to trespassers, with the hazardous substances at the Site. There is also a threat of another fire at the Site, which could cause the airborne release of hazardous substances from drums or other containers and potentially expose nearby residents and businesses to those hazardous materials. There are currently no other federal or state response mechanisms available to respond to the releases and threatened releases at the Site. *Id.* ¶ 11.

30.    Entry to the property owned or controlled by Galaxie Chemical by the agents, contractors, or other representatives of the United States is needed for the purposes of determining the need for response, choosing a response action, taking a response action, or otherwise enforcing the provisions of CERCLA, as provided in Section 104(e)(1) of CERCLA, 42 U.S.C. § 9604(e)(1). *Id.* ¶ 13.

31.    In addition to the preliminary investigation work cited above, EPA anticipates that additional response actions will be necessary to mitigate the release or the threat of release of hazardous substances. Those removal activities may include, but are not limited to removing

9

containers of hazardous substances, pollutants, or contaminants and disposing off-Site in an appropriate manner all materials removed from the Site. In addition, EPA will conduct further assessments to determine if additional response actions are necessary. *Id*. ¶15.

32.     Because Ms. Janine Marie Schwab, while acting in a representative capacity as the attorney-in-fact for Michael P. Santoro, declined to authorize EPA's entry to the Site for the purpose of conducting the needed response actions, the Court may grant entry. 42 U.S.C. § 9604(e)(5)(A) and 40 C.F.R. § 300.400(d)(4)(i).

33.     EPA anticipates needing at least 120 business days to complete the necessary assessment and response activities at the Site. *Id*. ¶ 14.

34.     EPA's work cannot be implemented without full lawful and unrestricted entry to the Site. *Id*. ¶ 13.

35.     The United States therefore seeks an Administrative Warrant authorizing entry to the Site to perform the removal actions described above, pursuant to CERCLA, for 120 business days from the date of entry.

Respectfully submitted,

June 21, 2018                           *s/ Richard S. Greene IV*
Dated                                   RICHARD S. GREENE IV
                                        Trial Attorney
                                        United States Department of Justice
                                        Environment and Natural Resources
                                        Division
                                        Environmental Enforcement Section
                                        P.O. Box 7611
                                        Washington, D.C. 20044

10

Tel: (202) 307-3967
Fax: (202) 514-0097
Email: richard.greene@usdoj.gov
Fed Bar (TN) #: 024450

CRAIG CARPENITO
United States Attorney
District of New Jersey

ALLAN URGENT
Assistant United States Attorney
District of New Jersey
970 Broad Street, 7th Floor
Newark, NJ 07102

OF COUNSEL:
William J. Reilly, Jr., Esq.
Assistant Regional Counsel
U.S. Environmental Protection Agency
New York, NY 10007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                              )
IN THE MATTER OF:                             )
                                              )          Magistrate No. _____
GALAXIE CHEMICAL                              )
CORPORATION SITE,                             )
PATERSON, NEW JERSEY                          )
_____)

DECLARATION OF NEIL NORRELL

I, Neil Norrell, pursuant to 28 U.S.C. § 1746, hereby declare and state under penalty of

perjury that the following is true to the best of my information and belief:

1.      I am an Environmental Scientist in the Emergency and Remedial Response

Division ("ERRD") of the Environmental Protection Agency, Region 2 ("EPA"), in Edison, New

Jersey. I am presently employed by EPA as an On-Scene Coordinator ("OSC"). I submit this

Declaration in support of the EPA's motion for a warrant to immediately enter the property

located at 6-34 Piercy Street, Paterson, New Jersey (Lot 1, Block 115), also known as the

Galaxie Chemical Corporation Site ("Site"), as authorized by Section 104(e) of the

Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended

("CERCLA"), 42 U.S.C. § 9604(e).

2.      I have been an OSC with EPA since June 1990. As an OSC, my duties

include, but are not limited to: conducting removal site evaluations and removal actions at

contaminated sites, providing emergency response activities for both hazardous substances and

oil discharges, and performing enforcement activities including, but not limited to, assessments

and potentially responsible party searches.

3.      I earned a Bachelor of Arts degree in Natural Science/Mathematics from Thomas Edison State College in Trenton, New Jersey, in 2003. I have had extensive training in conducting removal assessments and removal actions and in the identification and handling of hazardous substances. In my 28 years as an OSC I have conducted assessments, removal actions, and other emergency response operations pursuant to CERCLA at more than 30 facilities.

4.      I make this Declaration based upon my personal knowledge of the Site and upon my review of the official records of EPA and the New Jersey Department of Environmental Protection ("NJDEP") concerning the Site.

5.      The Site is a 1.24-acre property that includes a commercial facility consisting of a single building that is divided into several sections. Several chemical storage areas are located in the building. There are entrances to the facility along Piercy Street, Holsman Street, East Main Street and North Straight Street.  The area surrounding the building is mixed residential and commercial with the closest residence located approximately 40 feet to the southeast.  The Site is bordered by Piercy Street, Holsman Street, East Main Street and North Straight Street.

6.      On May 14, 2018, the NJDEP Bureau of Emergency Response notified EPA of a May 12, 2018, fire within the abandoned Galaxie Chemical Corporation facility located on Piercy Street in Paterson, NJ. The fire began at approximately 7:30 pm on Saturday, May 12, 2018, and was extinguished at 10:30 pm.

7.      On May 14, 2018, in coordination with NJDEP, I entered the building to assess the conditions at the facility, which appeared to have been abandoned for several years.

8.      During my May 14 visit to the facility, I observed approximately 500 drums located throughout the structure. Many of the drums contained various acids, including hydrochloric acid and acetic acid and flammable materials including xylene, and oxidizers.

Some drums were labeled as containing 3,3-dichlorobenzidine. Xylene, 3,3-dichlorobenzidine, hydrochloric acid and acetic acid are listed hazardous substances under 40 C.F.R. § 302.4. Most of the drums are in poor condition; improperly stored, leaking, and or rusting. Additionally, numerous fiberboard drums are located throughout the property and are in various stages of deterioration. Photographs of the conditions at the facility at the time of the May 18 facility visit are attached at Exhibit A1.

9.     EPA classifies 3,3'-dichlorobenzidine as a probable human carcinogen. *See* Exhibit A2.  Xylene is flammable as a liquid and vapor and is harmful if it comes into contact with skin or is inhaled. Exhibit A3. Hydrochloric acid is corrosive to the eyes, skin, and mucous membranes. Exhibit A4. Acetic acid also is flammable as a liquid and a vapor, and can cause severe skin burns and eye damage. Exhibit A5.

10.     The Site is not fully secured aside from periodic monitoring conducted by NJDEP, and there is evidence of unlawful entry. For instance, during my May 14 visit to the Site I observed that forcibly opened entryway doors, broken windows, and personal belongings in the building. What's more, NJDEP informed me that the City of Paterson Fire Department determined trespassers started the May 12 fire.

11.     The Site currently poses significant threats to public health or welfare or the environment. Such threats include the immediate threat of exposure through direct human contact, including to trespassers, with the hazardous substances at the Site. There also is also a threat of another fire at the Site, which could cause the airborne release of hazardous substances from drums or other containers and potentially expose nearby residents and businesses to those hazardous materials. There currently are no other federal or state response mechanisms available to respond to the releases and threatened releases at the Site.

12.     According to my discussion with EPA's Office of Regional Counsel, NJDEP verbally referred the Site to the EPA on May 14, 2018, in order for EPA to address the hazardous conditions there. This referral was followed by a May 17, 2018 written referral from Robert Van Fossen, Director of the Emergency Management Program for NJDEP.  NJDEP referred the Site to EPA based on the condition of the building and the deteriorated condition of the containers posing an imminent threat to the health and safety of the surrounding community, responders and the environment. A copy of NJDEP's May 18, 2018, referral letter is at Exhibit A6.

13.     On May 15, 2018, I received authorization from Angela Carpenter, who is the Deputy Director for the Emergency and Remedial Response Division of EPA Region 2, to perform an emergency removal action to address the release or threatened release of hazardous substances, pollutants, or contaminants at the Site. EPA's removal action will include inventorying and sampling container contents and other potentially hazardous materials at the Site and conducting field analysis to determine waste characteristics, and confirmatory enforcement sampling. Containers will be stabilized as needed. Additional measures will also be taken to secure the facility from trespassers.

14.     In addition to the investigative work, I anticipate that additional response actions will be needed at the Site to mitigate the release or threat of release of hazardous substances. Those removal activities may include, but are not limited to removing containers of hazardous substances, pollutants, or contaminants; and disposing off-Site in an appropriate manner all materials removed from the Site. Further assessment will be conducted to determine if additional response actions are necessary.

15.     EPA employees, agents, contractors and other representatives need immediate and unrestricted entry to the Site to perform the response actions described above.

16.     Due to uncertainties in weather, the contracting process, and unknown conditions at the Site, EPA needs at least 120 business days to complete the identified activities.

6/14/18
_____
Date

_____
NEIL NORRELL
On-Scene Coordinator
U.S. Environmental Protection Agency, EPA Region 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                        )
IN THE MATTER OF:                       )
                                        )          Magistrate No. _____
GALAXIE CHEMICAL                        )
CORPORATION SITE,                       )
PATERSON, NEW JERSEY                    )
_____)

## DECLARATION OF ROBERT J. MONTGOMERY

I, Robert J. Montgomery, pursuant to 28 U.S.C. § 1746, hereby declare and say as follows:

1.  I make this Declaration in support of the United States' *Ex Parte* Application for a Warrant onto the Galaxie Chemical Corporation, Inc. Site, located at 6-34 Piercy Street (Lot 1, Block 115), Paterson, New Jersey (the "Site").

2.  I am a Civil Investigator for the United States Environmental Protection Agency, Region 2 ("EPA"), and have held this position since 2016.  My duties include conducting investigations in support of EPA's efforts to respond to releases and threatened releases of hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675. I was previously employed by EPA as an On-Scene Coordinator from 1989-2006.  My duties as On-Scene Coordinator included conducting, coordinating, overseeing, and directing removal or other response actions conducted under CERCLA and Subpart E (Hazardous Substance Response) of the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. Part 300.

3.  I received an Associate in Applied Science Degree in Fire Science from Bergen Community College, with a minor in Police Science in 1978 and a Bachelor of Science in Criminal Justice/Fire Safety Administration and Security form Jersey City State College in 1980.

4.      I make this Declaration based upon personal knowledge obtained during the time period identified in this Declaration, my review of records and reports made available to EPA with regard to the Site or obtained during my research, my educational and professional training, and my knowledge and experience gained from my work at EPA.

5.      On May 18, 2018, William Reilly, Esq., an attorney in EPA Region 2, Office of Regional Counsel, asked me to assist in identifying persons who may have the authority to grant EPA entry to the Site so that EPA could respond to the releases and threatened releases of hazardous substances there.

6.      Information that I obtained from various on-line databases identified Mr. Michael P. Santoro, who currently resides at 23 S. Beaumont Place, Whippany, New Jersey, as the President and Chief Executive Officer ("CEO") of Galaxie Chemical Corporation, and that Mr. Santoro is 89 years old.

7.      On May 21, 2018, I traveled to Mr. Santoro's residence for the purpose of asking him to sign a "Consent for Access to Property" form ("consent form") that would have granted EPA permission to enter the Site in order to address the releases and threatened releases of hazardous substances there.

8.      While at Mr. Santoro's residence I was told by both his home health care aid and Ms. Donna Marie Santoro (his daughter) that Mr. Santoro has dementia and that neither Mr. Santoro nor Donna Marie Santoro would sign the consent form.  After explaining the urgent public safety matter concerning the Site, Ms. Santoro stated that "no one would sign that document [*sic*]" (referencing the "consent form") and that "if you need a warrant to gain entry to go get one." I left a copy of the consent form with the home health care aid as Ms. Santoro had left our conversation to return to a business phone call.

9.      On May 22, 2018, I spoke with Mr. Santoro's son, Dr. Michael Santoro Jr. and, after I explained the need to obtain authorization to enter the Site, Dr. Santoro advised me to speak with the attorney who had represented Mr. Santoro in a bankruptcy case (he did not provide said attorney's name) to obtain a warrant for entry. Dr. Santoro also stated that his father, Michael P. Santoro, suffered from dementia.

10.      Information that I obtained from various on-line databases identified Mr. Scott D. Sherman, Esq., as the attorney who represented Mr. Santoro in said bankruptcy case.

11.      On May 21 and May 22, 2018, I reported my findings and the results of my conversations with members of the Santoro family to Mr. Reilly.

12.      On June 7, 2018, I traveled with Mr. Reilly to the home of Ms. Janine Marie Schwab, who is also a daughter for Mr. Santoro. Ms. Janine Schwab represented that she is the attorney-in-fact for Mr. Santoro. The purpose of the visit was to speak with Ms. Janine Schwab personally to obtain her consent to enter the Site and have her sign EPA's consent form as attorney-in-fact for Mr. Santoro.  Ms. Janine Schwab said she would consider the request and provide an answer by June 8, 2018.

13.      On June 8, 2018, Mr. Reilly reported that Ms. Janine Schwab did not contact EPA as promised.

I, Robert J. Montgomery, declare under penalty of perjury that the foregoing is true and accurate.  Executed on this ⁄⁄day of June, 2018.

Robert J. Montgomery
Civil Investigator

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                                                    )
IN THE MATTER OF:                                  )
                                                                    )          Magistrate No. _____
GALAXIE CHEMICAL                                   )
CORPORATION SITE,                                   )
PATERSON, NEW JERSEY                         )
_____)

## ADMINISTRATIVE WARRANT FOR ENTRY UPON PROPERTY

TO:      ANY AUTHORIZED EMPLOYEE, REPRESENTATIVE, CONTRACTOR, OR
         SUBCONTRACTOR OF THE UNITED STATES ENVIRONMENTAL
         PROTECTION AGENCY AND THE UNITED STATES MARSHAL FOR THE
         DISTRICT OF NEW JERSEY:

The Court finds that an Application for an Administrative Warrant has been submitted on

behalf of the United States Environmental Protection Agency ("EPA"), and that the Application

demonstrates sufficient justification for entry onto and remaining on the property located at 6-34

Piercy Street (Lot 1, Block 115) in the City of Paterson, New Jersey (the "Site"), for the EPA to

implement the response actions discussed below.

The Court further finds good cause to issue this Administrative Warrant; that this

Warrant is reasonable; and that there is a reasonable basis to believe that authorizing entry to

implement a response action under the Comprehensive Environmental Response, Compensation,

and Liability Act of 1980, as amended ("CERCLA"), is appropriate because there may be a

release or threat of a release of a hazardous substance or pollutant or contaminant at the Site and

that the actions discussed below are authorized.

The Court also finds that the United States has demonstrated through its Application and

Memorandum submitted in support thereof that issuance of this Warrant is constitutional and

2

based on rights of entry, inspection, sampling, and removal activities that are authorized by statute.

This entry and inspection is authorized by Section 104(e) of CERCLA, 42 U.S.C. § 9604(e), and is for the purpose of conducting response actions pursuant to Sections 104(a) and (b) of CERCLA, 42 U.S.C. §§ 9604(a) and (b). The response actions to be taken at the Site include: 1) securing the Site to prevent unauthorized entry and to prevent the public from coming into contact with hazardous substances at the Site; 2) inspecting the Site; 3) sampling various containers, soil, and surface water contained on the Site; and 4) conducting such other response and removal actions as EPA deems necessary to protect human health or welfare or the environment that are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").   These actions are to investigate, evaluate, and/or address the release or threat of release of hazardous substances, pollutants or contaminants at the Site.

NOW, THEREFORE, YOU ARE HEREBY AUTHORIZED TO:

Enter on and into, move about, remain on or about, and re-enter as necessary, the Site described above in the City of Paterson, New Jersey, at all reasonable times for the purpose of conducting the following response actions authorized by Sections 104(a), (b), and (e) of CERCLA, 42 U.S.C. §§ 9604(a), (b), and (e), including:

(1)     Securing the Site to prevent unauthorized entry and to prevent the public from coming into contact with hazardous substances at the Site;

(2)     Inspecting the Site;

(3)     Sampling various containers, soil, and surface water contained on the Site; and

3

(4)     Conducting such other response and removal actions as EPA deems necessary to protect human health or welfare or the environment that are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP"), including but not limited to the following:

     (a)     removing containers of hazardous substances, pollutants, or contaminants;

     (b)     off-Site disposal in an appropriate manner of all materials removed from the Site; and

     (c)     further assessment to determine if additional response actions are necessary.

ACCORDINGLY, IT IS ORDERED that:

All owners, occupants, and persons in control of the Site and in control of any containers on the Site or other hazardous substances, pollutants, or contaminants at the Site, if any, shall permit the persons specified above to enter the Site for the purposes specified above.

A copy of this Warrant shall be delivered to the occupant, if any, of the Site at the time of initial entry.   If no occupant is present, a copy of this Warrant shall be left at the Site at the time of initial entry, and a copy shall be mailed to the last known owners and occupants of the Site.

The duration of this Warrant shall be of such reasonable length as to enable EPA personnel or their agents to complete satisfactorily those actions specified above and authorized by Sections 104(a), (b), and (e) CERCLA, 42 U.S.C. §§ 9604(a), (b), and (e), and shall not extend longer than 120 business days from the date of this Warrant, unless an extension of time is approved by the Court.

4

The United States Marshal is authorized to assist the EPA in such manner as may be reasonably necessary and appropriate to execute this Warrant.

Upon the completion of response activities, a prompt return of this Warrant shall be made to this Court showing that the Warrant has been executed and that the entry has been completed within the specified time period above.


Dated this ____ day of _____, 2018,

At_____, New Jersey.


_____

UNITED STATES MAGISTRATE

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

## DEFENDANTS

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
        Plaintiff

☐ 3   Federal Question
        *(U.S. Government Not a Party)*

☐ 2   U.S. Government
        Defendant

☐ 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original
        Proceeding

☐ 2   Removed from
        State Court

☐ 3   Remanded from
        Appellate Court

☐ 4   Reinstated or
        Reopened

☐ 5   Transferred from
        Another District
        *(specify)*

☐ 6   Multidistrict
        Litigation -
        Transfer

☐ 8   Multidistrict
        Litigation -
        Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

☐   CHECK IF THIS IS A **CLASS ACTION**
       UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:     ☐ Yes    ☐No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE                                    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.